**United States District Court**
For the Northern District of California

1
2
3
4           UNITED STATES DISTRICT COURT
5           NORTHERN DISTRICT OF CALIFORNIA
6
7
8   PATRICIA JONES,                          No. C-05-3539 EMC
9             Plaintiff,                     **ORDER GRANTING DEFENDANT'S**
                                             **MOTION TO DISMISS, DENYING**
10        v.                                 **PLAINTIFF'S MOTION FOR REMAND,**
                                             **AND DENYING PLAINTIFF'S LEAVE**
11  THYSSENKRUPP ELEVATOR, *et al.*,         **TO FILE AMENDED COMPLAINT AS**
                                             **TO DEFENDANT BRADLEY**
12            Defendants.
                                             **(Docket Nos. 7, 15, 18)**
13  _____/
14
15              I.   **INTRODUCTION**
16        Plaintiff Patricia Jones initially filed suit against Defendants Thyssenkrupp Elevator Corp.
17  ("TKE") and Lisa Bradley in state court.  Subsequently, TKE removed the case to federal court and
18  Ms. Bradley joined in the removal.  Defendants then filed a motion to dismiss Ms. Bradley from the
19  case.  In response, Ms. Jones filed a motion to remand and shortly thereafter a motion for leave to
20  amend her complaint.  Defendants' motion to dismiss, Ms. Jones's motion to remand, and Ms.
21  Jones's motion for leave to amend are all currently pending before the Court.
22          II.   **FACTUAL & PROCEDURAL BACKGROUND**
23  A.    Original Complaint
24        In her original complaint, filed in state court, Ms. Jones alleged as follows.
25        TKE is a business engaged in providing repair services to elevators and escalators.  *See*
26  Compl. ¶ 2.  Ms. Bradley is a supervisor at TKE.  *See id.* ¶ 8.
27
28

In December 2002, Ms. Jones was hired as a service technician for TKE.  *See id.* ¶ 12.  She informed Defendants about rotator cuff injuries that she had suffered on her previous job when she began employment with TKE.  *See id.*

Several months later, in March 2003, Ms. Jones was promoted to superintendent and was given a raise.  *See id.* ¶ 13.  In September 2003, Ms. Jones was promoted a second time, this time to service manager.  *See id.* ¶ 14.  However, this time she was not given a raise.  *See id.*

In April 2004, Ms. Jones was demoted from service manager to service technician.  *See id.* ¶ 15.  At the time of her demotion, Ms. Bradley asked Ms. Jones about her previously-reported rotator cuff injuries.  *See id.*  Ms. Bradley's questions were directly related to Ms. Jones's demotion.  *See id.*

After being demoted to service technician, Ms. Jones was not offered a reasonable accommodation even though Defendants knew of her injuries.  *See id.* ¶ 16.  In addition, a 33-year-old male was hired by Defendants to replace her as service manager.  *See id.* ¶ 17.  This employee was less experienced than Ms. Jones, was required to do less than she was, and was paid a higher salary than she was.  *See id.* ¶ 18.

Based on the above, Ms. Jones asserted the following claims in her original complaint: (1) gender discrimination, *see* Cal. Gov't Code § 12900 *et seq.*; (2) age discrimination, *see id.*; (3) disability discrimination, *see id.*; (4) violation of the Equal Pay Act, *see* Cal. Lab. Code § 1194.5; (5) discrimination in violation of public policy; (6) demotion in violation of public policy; (7) indemnification, *see* Cal. Lab. Code § 2802; and (8) unfair business practices, *see* Cal. Bus. & Prof. Code § 17200.  All of the claims were asserted against both TKE and Ms. Bradley with the exception of the claim for indemnification, which was asserted against TKE only.

B.    <u>Procedural Stance of Litigation</u>

As noted above, after Ms. Jones filed her original complaint in state court, TKE removed the case to federal court and Ms. Bradley joined in the removal.  TKE and Ms. Bradley then filed a motion to dismiss Ms. Bradley from the case.  In response, Ms. Jones filed a motion to remand and shortly thereafter a motion for leave to amend her complaint.

### III.  DISCUSSION

A.     Ms. Jones's Motion to Remand

    1.     Legal Standard

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  The removing party bears the burden of establishing that removal is proper.  *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1990).  The removal statute is strictly construed, and a court must reject federal jurisdiction if there is any doubt as to the right of removal in the first instance.  *See Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).

In the instant case, TKE removed Ms. Jones's case to federal court on the basis of diversity jurisdiction.  *See* 28 U.S.C. § 1332(a) (requiring that parties be in complete diversity and that the amount in controversy exceed $ 75,000).  Ms. Jones argues that there are two reasons why the removal was inappropriate: (1) because TKE is a citizen of California, just as Ms. Jones is, and therefore there is not complete diversity; and (2) because Ms. Bradley is also a citizen of California and she was not fraudulently joined to the litigation as claimed by Defendants.

    2.     Corporate Citizenship of TKE

Ms. Jones argues first that TKE is a citizen of California just as she is.  Under § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  *Id.* § 1332(c)(1).  The parties do not appear to dispute that TKE is incorporated in Delaware.  The only question therefore is whether TKE's principal place of business is California, as Ms. Jones asserts, or Georgia, as TKE asserts.

In general, there are two different tests used by courts to determine a corporation's principal place of business.

> First, the "place of operations test" locates a corporation's principal place of business in the state which "contains a substantial predominance of corporate operations."  Second, the "nerve center test" locates a corporation's principal place of business in the state where the majority of its executive and administrative functions are performed.  The Ninth Circuit Court of Appeals has given lower courts direction to determine which of these tests to apply: where a majority of a corporation's business activity takes place in one state, that state is the corporation's principal place of business, even if the corporate

headquarters are located in a different state.  The "nerve center" test
should be used only when no state contains a substantial predominance of the corporation's
of operations test unless the [party] shows that its activities do not substantially predominate in any
one state.

*Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495, 500 (9th Cir. 2001).

Regarding the place of operations test, the Ninth Circuit has emphasized that "determining whether a corporation's business activity substantially predominates in a given state plainly requires a comparison of that corporation's business activity in the state at issue to its business activity in other *individual* states" – *i.e.*, not a comparison of business activity in one state to the business activity in the rest of the United States as a whole.  *Id.* (emphasis added).  "'[S]ubstantial predominance' does not require the majority of a corporation's total business activity to be located in one state, but instead, requires only that the amount of corporation's business activity in one state be *significantly larger* than any other state in which the corporation conducts business."  *Id.* (emphasis added).

Factors used to determine if a given state contains a substantial predominance of corporate activity include "the location of employees, tangible property, production activities, sources of income, and where sales take place."  *Id.*  Several federal courts in California "have suggested that gross revenues are not an accurate measure of business activities in a given state. . . . [B]ecause California has the largest population of any state in the union, it will naturally have more gross sales and more customers than other states. [One court has] suggested that a more accurate measure would be revenue per capita based on the state population."  *Albino v. Std. Ins. Co.*, 349 F. Supp. 2d 1334, 1338 (C.D. Cal. 2004); *see also Ho v. Ikon Office Solutions, Inc.*, 143 F. Supp. 2d 1163, 1167-68 (N.D. Cal. 2001) (Brazil, J.) ("Because, by a considerable margin, California is the largest state, measured by population and economic activity, there often will be somewhat more activity in California than in any other individual state for truly national corporations.  But it is highly unlikely that Congress intended every national corporation that does more business in California than in any other single state, by virtue of that fact alone, to be deemed a citizen of California for purposes of diversity jurisdiction. . . . Where, as here, the percentage of the corporation's activities in each of

**United States District Court**
For the Northern District of California

1  many states is so modest, it is especially important for the court to take into account the distorting

2  effect (on the numbers that reflect relative activity in the many states) of the forum state's size.").

3       In the instant case, TKE has presented sufficient evidence to show that its business activity in

4  California is not significantly or disproportionately larger than any other state in which it conducts

5  business so that the nerve center test should be used.

6                 a.    <u>Place of Operations Test</u>

7                     i.    <u>Employees</u>

8       TKE has shown that it has fewer employees in California (7.2% of its workforce) than in

9  Tennessee (12.7%), New York (10.1%), Texas (9.8%), and Florida (8.8%).  Riegler Decl., ¶¶ 9, 10

10  and Ex. B.  This evidence demonstrates that TKE does not have significantly more employees or

11  contact with the public in California than in any other state.  *See Ho*, 143 F. Supp. 2d at 1165

12  (finding that even though California employed the largest percentage of defendant's employees, no

13  single state employed even 10% of total employees).

14       Ms. Jones contends that TKE has not satisfied its burden of demonstrating the location of its

15  employees, and its contact with the public, in opposing the place of operations test.  In *Ghaderi v.*

16  *United Airlines, Inc.*, 136 F. Supp. 2d 1041 (N.D. Cal. 2001), Judge Brazil commented on this factor

17  as follows:

18                 One of our goals is to determine in which state United
[Airlines] had the most public contact and the greatest potential for
19          litigation.  We strongly suspect that angry consumers and angry
employees are sources of a majority of litigation that corporate parties
20          face.  Therefore, for our purposes, employees are important in two
respects.  First, we must consider the bare number of employees in
21          each state.  Employment relationships with local people constitute
contact with the public and, as just stated, are likely to be a primary
22          source of litigation.  Moreover, the more local people United employs
in a state, the more well known it is in that jurisdiction.  Second, we
23          consider which types of employees interact with the public -- i.e., the
consumers.  The more employees in positions that interact with
24          consumers -- the greater the public contact in that state.

25  *Id.* at 1045 (emphasis added).  According to Ms. Jones, the evidence provided by TKE does not

26  address the second consideration – *i.e.*, the type of employees in each state.  Ms. Jones contends:

27  "[T]he public at large comes into contact with [TKE] by use of elevators and escalators.  As such,

28  the employees who have the most significant contact with [the] public are not sales staff,

manufacturing staff, administrative staff, or executive staff; it is the servicing of Defendant's product that results in the most significant contact with the public and provides for the larges[t] possibility of liability." Reply at 4-5.

Ms. Jones's argument is not convincing. First, the Ninth Circuit has never *required* that a court consider the type of employee in each state.[1] At most, the Ninth Circuit has said that "suits involving a corporation generally arise from its contacts with the public. Thus, considering a corporation to be a citizen of the state where it has the most public contact and greatest potential for litigation helps reduce the federal court diversity case load, which is a primary goal of the 'principal place of business' provision of the diversity statute." *Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1094 (9th Cir. 1990). Second, even if the Ninth Circuit did require consideration of the type of employee were relevant, there is no basis for assuming one type of TKE employee has substantially more contact than others. Its "service" employees, though working in public, do not necessarily have the most significant contact with the public. Indeed, when these employees do their job, it is unlikely that they interact with the public at all. There is no basis to question the aptness of the employee numbers above.

ii.    <u>Sales and Service Contracts</u>

As an indicator of its business activities, TKE has shown that its sales and service contracts are distributed over several states, but not predominantly in California. *Id.*, ¶ 11 and Ex. C. In the fiscal year ending September 30, 2004, TKE's business activities in Texas generated the highest percentage of its sales revenue from any one state: 10.97%. *Id.* By comparison, TKE's business in California produced 10.32% of its total sales revenue, whereas Florida produced 9.73% and New York, 5.53%. *Id.* TKE's business in various other states generated 3-4% of its revenue that year: Georgia, Illinois, Maryland, Massachusetts, Nevada, New Jersey, Pennsylvania and Washington. These statistics demonstrate that TKE's business activities are widespread, and not predominantly centered in California.

---

[1] And in only one other decision has a court considered the type of employee. *See Henry v. Emery Worldwide*, No. C 02-5533 MMC, 2003 U.S. Dist. LEXIS 2767, at *9 (N.D. Cal. Feb. 26, 2003) (relying on *Ghaderi*).

**United States District Court**
For the Northern District of California

1          iii.     Property

2          TKE has demonstrated that its tangible property is spread over thirty-six states, notably in

3 Florida (18.92% of TKE's total property), Texas (12.51%), Tennessee (8.73%), Washington

4 (7.54%), and Georgia (7.10%), with only 4.22% of its property in California.  Riegler Decl., ¶¶ 14,

5 15 and Ex. D.  The widespread location of TKE's property does not support a finding that California

6 substantially dominates its corporate business activities.

7          iv.     Executive and Administrative Operations

8          TKE has shown that its executive and administrative operations are conducted primarily in

9 Georgia, not in California.  *Id.*, ¶¶ 4, 5.  Its financial, accounting, administrative, and human

10 resources departments are located primarily at TKE's headquarters in Atlanta, Georgia.  Its sales and

11 marketing department, however, is headquartered in Dallas, Texas, as is its technical support center.

12 *Id.*, ¶ 6.  TKE's six regional presidents are spread out over the country, as are its executive vice

13 presidents, only one of whom is located in California.  *Id.*, ¶ 7 and Ex. A.

14          TKE has presented sufficient evidence that no one state contains a substantial predominance

15 of its business activities.  The Court finds that TKE's overall business activity is so widespread that

16 California cannot be considered its "place of operations" and applies the "nerve center" test to

17 determine TKE's principal place of business.

18          Ms. Jones tries to argue otherwise, claiming that the Court needs to look beyond the normal

19 factors (*i.e.*, location of employees, tangible property, production activities, sources of income, and

20 where sales take place) because of the "unique" nature of TKE's business – "manufacturing,

21 installing, and maintaining elevators and escalators."  Reply at 2, 7.  According to Ms. Jones, the

22 normal factors should be used only when direct sales transactions are involved.  There are several

23 problems with Ms. Jones's argument.  First, she cites no authority in support of her position.

24 Second, TKE's business does involve direct sales transactions, namely, the sale of a service.  *Cf.*

25 *Henry v. Emery Worldwide*, (N.D. Cal. 2003) 2003 U.S. DIST LEXIS 2767 (sale of transportation

26 service).

27          Accordingly, the place of operations test is not appropriate to determine the citizenship of

28 TKE.

**United States District Court**
For the Northern District of California

b.   Nerve Center Test

TKE has presented evidence that its headquarters is located in Georgia, and that its corporate financial and administrative policies are made primarily there.  Riegler Decl., ¶ 4.  TKE's Chief Financial Officer, Executive Vice President of Human Resources, Vice President of Finance and Southeast Regional President are located in Georgia.  Although the Sales and Marketing Department and Chief Operations Officer are located in Texas, the Court finds that the totality of the evidence supports a finding that Georgia constitutes TKE's principal place of business under the nerve center test.  Therefore , there is diversity of citizenship between Ms. Jones and TKE.

3.   Fraudulent Joinder of Ms. Bradley

In its notice of removal, TKE argued that the California citizenship of Ms. Bradley should be ignored for purposes of diversity jurisdiction because Ms. Jones had failed to allege any valid cause of action against Ms. Bradley.  In her motion to remand, Ms. Jones asserts that Defendants have failed to demonstrate that Ms. Bradley was fraudulently joined to the case to prevent removal to federal court.

> Under the Ninth Circuit rule, where a plaintiff fails to state a cause of action against a resident defendant and the failure is obvious according to the settled rules of the state, the joinder of a non-diverse defendant is deemed fraudulent, and the non-diverse defendant's presence in the lawsuit is ignored for purposes of determining diversity. . . . Simply stated, the test is whether on the face of the removed complaint there is any possibility plaintiff could prevail.

*Simpson v. Union Pac. R.R. Co.*, 282 F. Supp. 2d 1151, 1155 (N.D. Cal. 2003); *see also Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) ("Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, 'if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'").

"There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion."  *Plute v. Roadway Package Sys.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001) (Illston, J.) (citing Ninth Circuit cases holding that burden of establishing federal jurisdiction is on party seeking removal).  Moreover,

[i]n determining whether a defendant was joined fraudulently, the courts must resolve "all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party." Furthermore, "all doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading must be resolved in favor of remand, and a lack of clear precedent does not render the joinder fraudulent." The court may look beyond the pleadings and consider affidavits or other evidence to determine if the joinder was a sham.

*Id.*

### a.   Allegations in Original Complaint

As a preliminary matter, the Court notes that, after filing the motion to remand, Ms. Jones filed a motion for leave to amend her original complaint. Although the Court has at its disposal Ms. Jones's proposed first amended complaint, "[i]n determining the existence of removal jurisdiction, [a court] ordinarily look[s] to the complaint as originally filed, and not as amended." *Harris v. Provident Life & Acc. Ins. Co.*, 26 F.3d 930, 932 (9th Cir. 1994); *see also Pacheco De Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) ("The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties."). Even the authority cited by Ms. Jones recognizes this rule. *See Archuleta v. American Airlines, Inc.*, No. CV 00-1286 MMM (Shx), 2000 U.S. Dist. LEXIS 21076, at *5 n.2 (C.D. Cal. May 12, 2000) ("While plaintiff has filed an amended complaint, the court must determine whether jurisdiction exists by evaluating the claims alleged in the original complaint.").

The above rule is important because a court cannot take into account any factual allegations not contained in the original complaint. In *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416 (9th Cir. 1989), the Ninth Circuit refused to consider factual allegations contained in the plaintiff's proposed amended complaint but not the original complaint – taking note of the rule that the right of removal is determined by the pleadings as they stand at the time of removal. *See id.* at 1426 n.12. Similarly, in *Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134 (S.D. Cal. 1998), a district court refused to consider factual allegations not contained in the original complaint. *See id.* at 1137 ("The complaint as it existed at removal does not allege any wrongdoing by the individual defendants."); *see also Lynch Ford, Inc. v. Ford Motor Co., Inc.*, 934 F. Supp. 1005, 1007 (N.D. Ill. 1996) (limiting

United States District Court

For the Northern District of California

9

**United States District Court**
For the Northern District of California

fraudulent joinder inquiry to factual assertions in complaint; not considering "additional allegations – which are nowhere to be found in the complaint"). To be sure, some courts have suggested that some factual allegations not contained in the original complaint may be considered under narrow circumstances – *i.e.*, when it "*clarif[ied] or amplif[ied]* the claims actually alleged." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999) (emphasis added).

In addition, some courts have held that claims not actually alleged in the original complaint may not be considered even when such claims might be possibly based on the facts contained in the original complaint. In fact, in *Griggs*, the Fifth Circuit specifically stated that "[p]ost-removal filings may not be considered . . . when or to the extent that they present new causes of action or theories not raised in the controlling petition in state court." *Id.* (emphasis added); *see also Jade Marine, Inc. v. Detroit Diesel Corp.*, No. 02-2907 Section: "R" (4), 2002 U.S. Dist. LEXIS 22184, at *4 (E.D. La. Nov. 15, 2002) ("In making a determination of fraudulent joinder, . . . the Court need not consider the viability of causes of action *not* alleged in the state court complaint.") (emphasis in original); *Sohmer v. American Med. Sec'y, Inc.*, No. 3:02-CV-1680-M, 2002 U.S. Dist. LEXIS 19573, at *4-5 (N.D. Tex. Oct. 15, 2002) ("[T]he Court cannot allow this additional evidence to breathe life into causes of action not asserted in the petition at the time of removal."); *Howard Griggs Trucking, Inc. v. American Central Ins. Co.*, 894 F. Supp. 1503, 1507 (M.D. Ala. 1995) (stating that "propriety of removal should be considered based upon the pleading as of the date of removal" so that court would "confine its analysis to the fraud claims, which are the only claims asserted against [defendants] as of the date of removal," and not the negligence and wanton misconduct claims added in amended complaint).

However, in *Archuleta*, the district court held otherwise, concluding that, even though the plaintiff did not have a valid claim under California Government Code § 12940(g) for aiding and abetting a violation of FEHA, "the allegations pled in that claim may well be sufficient to support a § 12940(f) claim against [defendants] for retaliation." *Archuleta*, 2000 U.S. Dist. LEXIS 21076, at *46. In so holding, *Archuleta* employed the standard for evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See id.* at *40-41 ("The standard for fraudulent joinder is whether there is any possibility that a claim can be stated against the allegedly 'sham' defendants.

United States District Court

For the Northern District of California

1  Thus, the analysis used is similar to that employed in deciding motions to dismiss under Rule

2  12(b)(6) . . . .").  As the *Archuleta* court noted: "Under Rule 12(b)(6), 'a complaint should not be

3  dismissed if it states a claim under any legal theory, even if the plaintiff erroneously relies on a

4  different legal theory.'"  *Id.* at *41.  The Court agrees with *Archuleta's* analysis.

5        Accordingly, the Court will consider only the factual allegations contained in the original

6  complaint.  It will consider legal claims not actually alleged in the original complaint but only if they

7  are based on factual allegations contained in the original complaint.

8        Defendants argue that Ms. Bradley has been fraudulently joined to the case because, in her

9  original complaint, Ms. Jones failed to state *any* cause of action against Ms. Bradley.  The causes of

10  action raised in the original complaint against Ms. Bradley are as follows:

11  (1)  Discrimination based on gender, age, and disability in violation of FEHA.  Defendants assert

12       that, under FEHA, an individual supervisor who does not qualify as an employer cannot be

13       held liable for discrimination.  *See Reno v. Baird*, 18 Cal. 4th 640, 663 (1998) ("[I]ndividuals

14       who do not themselves qualify as employers may not be sued under the FEHA for alleged

15       discriminatory acts.").

16  (2)  Discrimination and demotion in violation of public policy.  Defendants argue that one of the

17       public policies invoked by Ms. Jones is FEHA but, as noted above, there is no valid FEHA

18       claim against Ms. Bradley.  *See id.* at 664 ("Because plaintiff may not sue Baird as an

19       individual supervisor under the FEHA, she may not sue her individually for wrongful

20       discharge in violation of public policy.").

21  (3)  Violation of the Equal Pay Act (*i.e.*, California Labor Code § 1197.5).  Defendants contend

22       that a § 1197.5 claim can be brought only against an employer and Ms. Bradley does not

23       qualify as such.  *Cf. Reynolds v. Bement*, 36 Cal. 4th 1075, 1087-88 (2005) (concluding that

24       plaintiff could not hold corporate agents acting within the scope of their agency personally

25       liable for a violation of California Labor Code § 1194, *i.e.*, failure to pay wages).

26  (4)  Unfair business practices (*i.e.*, violation of California Business & Professions Code § 17200).

27       Defendants assert that, because all of the above claims fail as a matter of law, this claim must

28       also fail.  *See* Mot. to Dismiss at 7 (noting that Ms. Jones claims that violations of FEHA and

United States District Court

For the Northern District of California

1  California Labor Code constitute unfair business practices but that "because BRADLEY

2  cannot be held individually liable for any of the underlying conduct asserted as the basis for

3  the B&P § 17200 cause of action, there can be no finding of 'violations' of [FEHA or the

4  California Labor Code]").

5          b.        <u>Discrimination Based on Gender, Age, and Disability in Violation of FEHA</u>

6        Ms. Jones does not dispute that, in *Reno*, the California Supreme Court held that, under

7  FEHA, an individual supervisor who does not otherwise qualify as an employer cannot be held liable

8  for discrimination.  Instead, Ms. Jones argues that Ms. Bradley – even though an individual

9  supervisor and not an employer – can still be held liable for harassment (under FEHA) and

10 retaliation (both under FEHA and the common law).  FEHA specifically provides that a person and

11 not just an employer can be held liable for harassment and retaliation.  For harassment, see *Reno*, 18

12 Cal. 4th at 659-60 ("Some of the FEHA provisions, such as those involving harassment, do, indeed,

13 apply to individual persons as well as employers."); Cal. Gov't Code § 12940(j)(1) (providing that it

14 shall be an unlawful employment practice "[f]or an employer . . . *or any other person*, because of

15 race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical

16 condition, marital status, sex, age, or sexual orientation, to harass an employee") (emphasis added).

17 For retaliation, see *Walrath v. Sprinkel*, 99 Cal. App. 4th 1237, 1241-42 (2002) (concluding that

18 individual supervisor may be held liable for retaliation under FEHA); Cal. Gov't Code § 12940(h)

19 (providing that it shall be an unlawful employment practice "[f]or any employer . . . *or person* to

20 discharge, expel, or otherwise discriminate [*i.e.*, retaliate] against any person because the person has

21 opposed any practices forbidden under this part or because the person has filed a complaint,

22 testified, or assisted in any proceeding under this part") (emphasis added)

23                 i.     <u>Harassment</u>

24       In her original complaint, Ms. Jones did not specifically assert any claims for harassment.

25 However, Ms. Jones argues in her motion to remand that the original complaint contained factual

26 allegations that would support such a claim.  She asserts:

27         Plaintiff has pled facts supporting a cause of action for harassment
        under FEHA in that she was subjected to a hostile work environment
28         after disclosing her disability to BRADLEY.  Specifically, BRADLEY

United States District Court

For the Northern District of California

1                placed Plaintiff in a work environment that increased her risk of injury
after questioning Plaintiff about her disability.  The United States
2                Supreme Court held in *Harris v. Forklift Systems* (1993) 510 U.S. 17
that the physical threat a workplace poses to an employee is an
3                important factor in determining whether there exists a "hostile work
environment."

5   Mot. to Remand at 9-10.

6       Ms. Jones's argument above appears to be based on the following allegations in the original

7   complaint:

8             15.     In April 2004, JONES was demoted to Service Technician.  At
the time of her demotion, Defendant BRADLEY questioned
9                    her about her previously-reported rotator cuff injuries.  JONES
is informed and believes that BRADLEY's questions about her
10                previously-reported rotator cuff injuries were directly related to
her demotion.

12             16.     After JONES' demotion, her job duties required her to be out
of the office, in the field, doing a lot of heavy lifting, and
13                consistently moving her arms and shoulders in awkward and
painful manners, in order to perform the manual maintenance
14                and service repairs on the elevators and escalators she worked
on.  Despite Defendants' actual knowledge of her injuries and
15                disability, JONES was not offered a reasonable
accommodation.

16   Compl. ¶¶ 15-16.

17       Ms. Jones's argument that a claim for harassment could be supported by the above

18   allegations is not persuasive.  The allegations of the complaint center on Ms. Jones's demotion to a

19   position without being offered any accommodation of her disabilities.  This constitutes an act of

20   discrimination, not harassment.  Discrimination claims "arise out of the performance of necessary

21   personnel management duties.  While harassment is not a type of conduct necessary to personnel

22   management, making decisions is a type of conduct essential to personnel management." *Janken v.*

23   *GM Hughes Electronics*, 46 Cal. App. 4th 55, 63-64 (1996).  Here, demotion without

24   accommodation is quintessentially a personnel management decision.  Ms. Jones does not allege any

25   verbal or physical abuse afflicted upon her by her superiors or co-workers.  She does not allege that

26   she was subject to such severe or pervasive abuse as to create a hostile working environment, the

**United States District Court**
For the Northern District of California

1    sine-qua-non of a harassment claim.[2]  To equate a demotion or the failure to accommodate with

2    harassment  would collapse the distinction between disability discrimination and harassment.  Ms.

3    Jones cites no authority to support such a result.

4         Considering the allegations contained in the original complaint, Ms. Jones fails to state a

5    claim for harassment against Ms. Bradley.

6                         ii.    Retaliation

7         In her original complaint, Ms. Jones did not specifically assert any claims for retaliation,

8    whether under FEHA or the common law.  Ms. Jones contends, however, in her motion to remand

9    that she

10            has pled facts supporting a cause of action for retaliation under FEHA,
              in that she was subjected to an adverse employment action (demotion)
11            after engaging in several forms of protected activity (*i.e.*, complaining
              about pay inequity between male and female workers, complaining of
12            sex discrimination, complaining of age discrimination, complaining of
              disability discrimination, complaining of harassment, etc.).

13

14    Mot. to Remand at 10.

15         Ms. Jones's original complaint clearly contains factual allegations about her demotion from

16    service manager to service technician.  However, there are no factual allegations in the original

17    complaint about her engaging in protected activity such as complaining about discrimination or

18    harassment.  Ms. Jones recognizes such, arguing that "[t]o the extent that the factual allegations are

19    not *complete*, the inferences drawn from the allegations made support a cause of action for

20    retaliation against Defendant BRADLEY."  *Id.* (emphasis added).  While inferences should be

21    drawn in Ms. Jones's favor, Ms. Jones is asking the Court to do more than make an inference in her

22

23         _____

24         [2]*See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993) (noting that whether an environment
     is sexually hostile or abusive must be determined based on the totality of the circumstances; one such
     circumstance would be whether the conduct is physically threatening or humiliating); *Williams v.*
25   *Boeing Co.*, 1999 WL 50882 at *2 (9th Cir. 1999) (stating that, to defeat summary judgment on
     disability-based hostile work environment claim, plaintiff had to establish, *inter alia*, that "he was
26   subjected to verbal or physical abuse because of his disability"); *Hiller v. Runyon*, 95 F. Supp. 2d 1016,
     1023 (S.D. Iowa 2000) ("A claim for harassment based on disability, similar to a claim under Title VII,
27   would require a showing that: (1) Hiller is a qualified individual with a disability; (2) he was subject to
     unwelcome harassment; (3) the harassment was based on his disability or a request for an
28   accommodation; and (4) the harassment was sufficiently severe or pervasive to alter the conditions of
     his employment and to create an abusive working environment.).

14

1    favor.  The fact that she was demoted in and of itself does not give rise to a reasonable inference of

2    retaliation.  The Court cannot insert materially different factual allegations about her having engaged

3    in protected activity without any basis therefor.  Considering the allegations contained in the original

4    complaint, Ms. Jones fails to state a claim for retaliation against Ms. Bradley.

5                    c.    Discrimination and Demotion in Violation of Public Policy

6            In her original complaint, Ms. Jones alleged both a claim for discrimination in violation of

7    public policy and a claim for demotion in violation of public policy.  For the former claim

8    (discrimination), the public policies identified were the California Constitution (article I, § 8),[3]

9    FEHA, and the Equal Pay Act (*i.e.*, California Labor Code § 1197.5).  *See* Compl. ¶ 60.  For the

10   latter claim (demotion), the public policies identified were the California Constitution (article I, § 8)

11   and FEHA.  *See id.*

12           In her motion to remand, Ms. Jones does not contend that she has a valid claim against Ms.

13   Bradley for *discrimination* in violation of public policy.  Instead, Ms. Jones only argues that she has

14   a valid claim against Ms. Bradley for *demotion* in violation of public policy.  According to Ms.

15   Jones, this claim "lies against BRADLEY in her individual capacity under the same rationale that

16   individual liability lies against her for Retaliation in Violation of FEHA, as well as at common-law."

17   *Id.* at 11.  As discussed above, however, Ms. Jones failed to include any factual allegations

18   supporting a claim for retaliation in her original complaint.  Absent retaliation for protected activity,

19   there is no claim for violation of public policy.

20                   d.    Violation of the Equal Pay Act (*i.e.*, California Labor Code § 1197.5)

21           In her motion to remand, Ms. Jones does not make any argument that the claim for violation

22   of the Equal Pay Act is valid with respect to Ms. Bradley.  She does not assert it as a basis for

23   remand.  Nonetheless, Defendants address the merits of the Equal Pay Act claim contending

24   fraudulent joinder.

25   _____

26           [3] Article I, § 8 provides as follows: "A person may not be disqualified from entering or pursuing
     a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic
27   origin."  Cal. Const., art. I, § 8.  *See, e.g.*, *Rojo v. Kliger*, 52 Cal. 3d 65, 90 (1990) (stating that "article
     I, section 8 is declaratory of this state's fundamental public policy against sex discrimination, including
28   sexual harassment").

**United States District Court**
For the Northern District of California

1    While not necessary to decide the motion to remand, the issue has been raised by Defendants.

2   It is relevant to the motion to dismiss, so the Court addresses it.  Defendants argue that the claim is

3   not valid with respect to Ms. Bradley because the statute applies to employers only and not

4   individual supervisors who are not otherwise employers.  They cite *Reynolds*, 36 Cal. 4th at 1075, in

5   which the California Supreme Court addressed a similar issue with respect to two other California

6   Labor Code provisions, *i.e.*, § 510 and § 1194.

7    Section 510 requires "an employer" to pay certain wages for hours worked in a day.  Section

8   1194 provides a remedy for "any employee" who is not paid wages as required.  In *Reynolds*, the

9   plaintiff argued that he was not compensated for his overtime work.  *See Reynolds*, 36 Cal. 4th at

10   1081.  The question for the Court was whether the plaintiff had stated a cause of action against eight

11   individuals who were officers, directors, or shareholders of the company or its subsidiary that owned

12   the business for which he formerly worked.  *See id.*

13    The plaintiff in *Reynolds* argued that, because § 510 did not define the term employer and

14   because § 1194 did not specify potential defendants who could be sued by an employee, the court

15   should apply the Industrial Welfare Commission (IWC) definition of employer to determine who

16   would be the proper defendants in the case.  *See id.* at 1085.  Under the IWC definition, corporate

17   control figures like the individual defendants would be considered employers.  *See id.*  In response,

18   the defendants asserted that the California Labor Code did not impose personal liability on corporate

19   officers and directors for unpaid wages owed by a corporate employer and that common law

20   principles protected them from liability.  *See id.* at 1086.

21    The California Supreme Court agreed with the defendants, noting that

22          [a] statute will be construed in light of the common law unless the
           Legislature ""clearly and unequivocally"" indicates otherwise. . . .
23          [H]ad the Legislature intended to depart from the common law by
           engrafting [the IWC definition as reflected in Wage Order No. 9] onto
24          section 1194, it would have more clearly manifested that intent.
           Neither section 510 nor section 1994 contains any reference to the
25          IWC employer definition: section 510 in detailing certain obligations
           of "an employer" leaves that term undefined; section 1194, without
26          mentioning "employer," simply provides that "any employee"
           receiving less than the applicable legal minimum wage or legal
27          overtime compensation is entitled to recover the same in a civil action.
           "In this circumstance – a statute referring to employees without

28

United States District Court

For the Northern District of California

1   defining the term – courts have generally applied the common law test
2   of employment."

3           Under the common law, corporate agents acting within the
    scope of their agency are not personally liable for the corporate
    employer's failure to pay its employees' wages.

4

5   *Id.* at 1087 (footnote omitted).

6           Defendants argue that, given the above analysis in *Reynolds*, an individual supervisor could

7   not be held personally liable under § 1197.5.  Section 1197.5 provides in part that "[n]o employer

8   shall pay any individual in the employer's employ at wage rates less than the rates paid to employees

9   of the opposite sex."  Cal. Lab. Code § 1197.5(a).  The statute does not specifically define

10  "employer."  Under *Reynolds*, "[a] statute will be construed in light of the common law unless the

11  Legislature clearly and unequivocally indicates otherwise."  *Reynolds*, 36 Cal. 4th at 1086 (internal

12  quotation marks omitted).

13          The *Reynolds* holding is controlling here.  It involves the same statutory language and the

14  same rationale, *i.e.*, that the common law provides no cause of action, and the legislature has not

15  clearly provided to the contrary.  There is no substantial basis for distinguishing § 1197.5 from the

16  provisions construed in *Reynolds*.  Nor is there any substantial basis for confining *Reynolds* to

17  directors and officers, rather than supervisors, as Ms. Jones contended at oral argument.  While

18  ambiguity under settled law should be resolved in plaintiff's favor in determining fraudulent joinder

19  (*see Filla v. Norfolk & Southern Ry.*, 336 F.3d 806, 810 (8th Cir. 2003) ("[I]f there is a 'colorable'

20  cause of action – that is, if the state law *might* impose liability on the resident defendant under the

21  facts alleged – then there is no fraudulent joinder.") (emphasis in original).), the Court finds no

22  ambiguity in the controlling state law here.  Ms. Jones fails to state a claim against Ms. Bradley

23  under the Equal Pay Act (Cal. Lab. Code § 1197.5).

24          e.      Unfair Business Practices (*i.e.*, Violation of California Business & Professions

25                  Code § 17200)

26          In her original complaint, Ms. Jones asserted a claim for violation of California Business &

27  Professions Code § 17200.  This section prohibits unlawful, unfair, of fraudulent business acts or

28  practices.  *See* Cal. Bus. & Prof. Code § 17200.  According to the original complaint, "by violating

**United States District Court**
For the Northern District of California

1  the foregoing statutes and regulations [*i.e.*, the causes of action discussed above], the acts of

2  defendants constitute unfair and unlawful business practices." Compl. ¶ 82. The original complaint

3  also states: "DEFENDANTS' violation of the California Labor Code and Government Code

4  constitutes a business practice because it was done repeatedly in a systematic manner to the

5  detriment of Jones." *Id.* ¶ 83.

6      Defendants argue that, because Ms. Jones has failed to state a valid claim against Ms.

7  Bradley with respect to each of the causes of action discussed above, she has also failed to state a

8  valid § 17200 claim.  In response, Ms. Jones contends that it does not matter whether any of Ms.

9  Bradley's actions violated FEHA or the California Labor Code because, under § 17200, Ms. Jones

10  need only establish that Ms. Bradley's actions were unfair. *See Cel-Tech Communications, Inc. v.*

11  *Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) ("The statutory language referring to

12  'any unlawful, unfair *or* fraudulent' practice makes clear that a practice may be deemed unfair even

13  if not specifically proscribed by some other law.") (emphasis in original).[4] Ms. Jones adds that,

14  because § 17200 "prescribes penalties against 'persons' who engage in acts of unfair competition,"

15  an individual supervisor such as Ms. Jones is a "person" who can be sued for a violation of § 17200,

16  even if she is not an employer. *Trinkle v. California State Lottery*, 71 Cal. App. 4th 1198, 1203

17  (1999) (citing California Business & Professions Code § 17201, which provides that "the term

18  person shall mean and include natural persons, corporations, firms, partnerships, joint stock

19  companies, associations and other organizations of persons"); *see also California Med. Ass'n v.*

20  *Regents of the University of Cal.*, 79 Cal. App. 4th 542, 551 (2000) (noting that persons, as defined

21  by § 17201, may be sued).

22      Ms. Bradley is a "person" within the meaning of § 17201. Moreover, the Business and

23  Profession Code reaches beyond unlawful acts and more broadly prohibits "unfair" acts.

24  Nonetheless, Ms. Jones fails to state a claim against her individually under § 17200.

25  _____

26      [4] One state court has said that an unfair business practice is one that "offends an established
    public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially

27  injurious to consumers." *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530
    (1984).  To determine whether a business practice is unfair, courts must "weigh the utility of the

28  defendant's conduct against the gravity of the harm to the alleged victim." *State Farm Fire & Cas. Co.
    v. Superior Court*, 45 Cal. App. 4th 1093, 1104 (1996).

1    First, as pointed out by Defendants in their reply brief in support of the motion to dismiss,

2  the statute requires that the defendant under § 17200 engage in a "business practice."  *See* Reply ISO

3  Mot. to Dismiss at 3 ("[A]s an individual, Bradley's actions are not her own 'business practices.'

4  Rather, she implements the practices of her employer.  Bradley is not a 'business' but was acting as

5  an agent for [TKE] . . . .").  In *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d

6  509 (1984), the court addressed the meaning of a business practice:

7    In so doing, [the defendant] called upon the trial court to answer
     questions already settled as a matter of law.  For example, in *Barquis*
8    *v. Merchants Collection Assn.* (1972) 7 Cal.3d 94 [101 Cal.Rptr. 745,
     496 P.2d 817], the business of defendant was collecting debts.  The
9    filing of litigation was a principal part of its business activity and thus
     was held a business practice.  The Supreme Court held repeated
10   violations of statute by acts which constituted a principal part of its
     business constituted an unlawful business practice and, as such, was
11   actionable under Civil Code section 3369 (now Bus. & Prof. Code, §
     17200 et seq.).
12
         The facts, admitted in the pleadings, were that [the defendant]
13   was in the business of operating and managing patient care hospitals
     and the sale of nursing home services.  Nursing care was its primary
14   business activity.  This admission established, without question, the
     series of acts complained of was a business activity or practice.  The
15   key question presented to the trial court was not whether this was a
     "business practice or activity" but rather whether this particular
16   business activity was unlawfully conducted.  The trial court, based
     upon more than sufficient evidence, found Casa Blanca was engaged
17   in a variety of unlawful practices in its primary business -- rendering
     nursing care.
18

19  *Id.* at 526-27.  *Cf. Wilkinson v. Times Mirror Corp.*, 215 Cal. App. 3d 1034, 1052 (1989) ("An

20  *employer's* business practices concerning its employees are within the scope of section 17200.")

21  (emphasis added).  The business practice of TKE is the sale of elevator equipment and service.  It is

22  doubtful that Ms. Bradley's individual personnel decision to demote Ms. Jones and not

23  accommodate her constitutes a "business practice," especially since there is no allegation of a

24  pattern or practice.  Ms. Jones cites no case in which the law has been applied to an individual

25  supervisor.  The requirement of a "business practice" appears problematic.

26    Moreover, the statute appears to be directed at employers rather than individual supervisors,

27  as evidenced by in the remedies provided thereunder.  The only remedies available under § 17200

28  are injunctive relief "and/or restitution (*i.e.*, disgorgement) of money or property wrongfully

United States District Court

For the Northern District of California

1   obtained 'by means of such unfair competition.'" *Diaz v. Allstate Ins. Group*, 185 F.R.D. 581, 594

2   (C.D. Cal. 1998); *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150

3   (2003) ("While any member of the public can bring suit under the act to enjoin a business from

4   engaging in unfair competition, it is well established that individuals may not recover damages.");

5   *Inline, Inc. v. Apace Moving Systems, Inc.*, 125 Cal. App. 4th 895, 903 (2005) (explaining difference

6   between damages and restitution). Ms. Bradley, like most individual supervisors in her position,

7   obtained no personal gain or unjust enrichment. Thus, any restitution would have to come from

8   TKE, the employer, not Bradley the supervisor.

9       Most importantly, even though § 17200 covers not only unlawful business practices but also

10  simply unfair ones, the California Supreme Court has warned that "[s]pecific legislation may limit

11  the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or

12  considered a situation and concluded no action should lie, courts may not override that

13  determination." *Cel-Tech*, 20 Cal. 4th at 182; *see also id.* at 183 ("If . . . the Legislature considered

14  certain activity in certain circumstances and determined it to be lawful, courts may not override that

15  determination under the guise of the unfair competition law. However, if the Legislature did not

16  consider that activity in those circumstances, the failure to proscribe it in a specific provision does

17  not prevent a judicial determination that it is unfair under the unfair competition law."). Therefore, a

18  plaintiff does not have license to "'plead around'" absolute bars to relief contained in other possible

19  causes of action by recasting those causes of action as ones for unfair competition. *Id.* at 182. In the

20  instant case, the unfair actions of Ms. Bradley alleged in the original complaint all pertain to the acts

21  of discrimination and equal pay violation which (as noted above) the California legislature has

22  concluded cannot lie against a supervisor. Thus, even if a supervisor could be sued under § 17200,

23  no claim lies under the original complaint as alleged in this case.

24      Under these settled rules of the state, Ms. Jones's original complaint fails to state a cause of

25  action for unfair business practices pursuant to Cal. Bus. & Prof. Code § 17000.

26              f.      Indemnification (Violation of California Labor Code § 2802)

27      Finally, Ms. Jones argues that she has a valid claim for indemnification against Ms. Bradley.

28  However, as noted by Defendants, the claim for indemnification in the original complaint is asserted

1    against TKE only, not Ms. Bradley.  Moreover, although the allegations supporting the claim refer to

2    Defendants collectively, there is nothing in the factual allegations supporting the claim that specifies

3    the factual basis for any such claim against Ms. Bradley specifically.

4                    g.    Summary

5          For the foregoing reasons, the Court concludes that according to settled rules of the state, Ms.

6    Jones clearly fails to state a cause of action against Ms. Bradley as an individual.  Thus, Ms. Bradley

7    was fraudulently joined.  *Simpson v. Union Pac. R.R. Co.*, 282 F. Supp. 2d at 1155.  Therefore, the

8    citizenship of Ms. Bradley should be disregarded for purposes of determining whether there is

9    diversity jurisdiction.  As there is complete diversity between Ms. Jones and TKE, the motion to

10   remand to state court is DENIED.

11   B.    Ms. Bradley's Motion to Dismiss

12         Because, as discussed above, Ms. Bradley was fraudulently joined in the litigation, her

13   motion to dismiss the complaint against her is GRANTED.  *See Bellecci v. GTE Sprint Communs.*

14   *Corp.*, No. C 02-03974 WHA, 2003 U.S. Dist. LEXIS 640, at *7 (N.D. Cal. Jan. 14, 2003) ("[T]he

15   'fraudulently-joined' defendant is disregarded for diversity jurisdiction purposes and such a

16   defendant is dismissed."); *Brown*, 17 F. Supp. 2d at 1137 ("[T]hese defendants are fraudulently

17   joined and are hereby dismissed.").

18   C.    Ms. Jones's Motion for Leave to Amend Complaint

19         In her proposed amended complaint, Ms. Jones adds new factual allegations as well as new

20   claims against both TKE and Ms. Bradley.

21                   1.    Proposed Amended Complaint

22         In her proposed amended complaint, filed after TKE removed her state case to federal court,

23   Ms. Jones made the following allegations.  TKE is a business engaged in providing repair services to

24   elevators and escalators.  *See* Proposed FAC ¶ 2.  Ms. Bradley is a supervisor at TKE.  *See id.* ¶ 8.

25         In December 2002, Ms. Jones was hired as a service technician for TKE.  *See id.* ¶ 12.  She

26   informed Defendants about rotator cuff injuries that she had suffered on her previous job when she

27   began employment with TKE.  *See id.*

28

**United States District Court**
For the Northern District of California

1    Several months later, in March 2003, Ms. Jones was promoted to superintendent and was

2    given a raise.  *See id.* ¶ 13.

3    In July 2003, one of Ms. Jones's male subordinates, Edwin Lew, behaved unprofessionally

4    towards her, resulting in a verbal warning for insubordination.  *See id.* ¶ 14.  That same month, a

5    hotel employee directed another of Ms. Jones's male subordinates, John Schroyer, to leave the hotel

6    where he was doing a job because of lack of performance on the job and rudeness to a customer.  *See

7    id.* ¶ 15.  These two incidents were the start of events in which several of Ms. Jones's male

8    subordinates tried to get her terminated.  *See id.* ¶ 17.  The male subordinates were motivated by

9    gender bias and by a retaliatory animus (*i.e.*, to retaliate against her for her complaints of disparate

10   treatment and harassment and for her efforts to enforce safety regulations).  *See id.*

11   In September 2003, Ms. Jones was promoted a second time, this time to service manager.

12   *See id.* ¶ 14.  However, this time she was not given a raise.  *See id.*

13   Within a day of her promotion, Mr. Schroyer asked for time off for vacation.  *See id.* ¶ 20.

14   Ms. Jones denied the request on the basis of lack of manpower and untimeliness.  *See id.*  Mr.

15   Schroyer then went over Ms. Jones's head to Ms. Bradley, who immediately approved the request

16   over Ms. Jones's objections.  *See id.*

17   In October 2003, Ms. Jones reviewed Mr. Schroyer's work at a certain location.  *See id.* ¶ 22.

18   Because his work was deficient, she issued him a quality control survey and a corrective action

19   report.  *See id.* ¶ 23.  That same month, Ms. Jones reviewed the work of another male subordinate,

20   Joel Elbright, at another location.  *See id.* ¶ 24.  His work was also deficient.  *See id.*

21   In November 2003, Ms. Jones attended a safety meeting held by TKE's director of safety,

22   Greg Blue.  *See id.* ¶ 25.  Shortly thereafter, she held a safety meeting for her staff to relay the

23   information she had received.  *See id.*  Mr. Schroyer challenged Ms. Jones's statements at the

24   meeting, suggesting, *e.g.*, that TKE employees did not have to abide by state safety requirements and

25   that they did not have to listen to Ms. Jones's instructions.  *See id.*

26   During a different meeting with male subordinates (to discuss an overtime authorization

27   policy), Mr. Schroyer again contested Ms. Jones's authority.  *See id.* ¶ 26.

28

**United States District Court**
For the Northern District of California

1   On or about December 1, 2003, Ms. Bradley issued to Ms. Jones a written warning.  *See id.* ¶

2   27.  "The general gist of the warning was that JONES's reprisals of the men's work were not

3   warranted, and that male Sales Technicians may leave [TKE] to work for a competitor if she

4   continued to hold them accountable to safety standards established by corporation and by law." *Id.*

5   The next day, December 2, 2003, Ms. Jones issued a rebuttal to Ms. Bradley's written

6   warning.  *See id.* ¶ 28.  As part of the rebuttal, Ms. Jones stated that TKE was not fully compliant

7   with corporate and government requirements.  *See id.*  She also complained about the "male

8   subordinates' lack of respect, insubordination, and intent to disrupt any professional gathering she

9   held" and asked for an investigation of her complaints.  *Id.*

10   During the time that she worked as a service manager, Ms. Jones also complained to Bradley,

11   as well as another TKE employee, Gil Crosby, about the fact that she was not being paid the same as

12   her male counterparts.  *See id.* ¶ 29.

13   In April 2004, following her complaints of discrimination, harassment, pay disparity, and

14   safety violations, Ms. Jones was demoted from service manager to service technician.  *See id.* ¶ 31.

15   At the time of her demotion, Ms. Bradley asked Ms. Jones about her previously-reported rotator cuff

16   injuries – *e.g.*, whether they would interfere with her ability to work in the field.  *See id.* ¶ 32.  After

17   being demoted to service technician, Ms. Jones was not offered a reasonable accommodation even

18   though Defendants knew of her injuries.  *See id.* ¶ 33.  In addition, a 33-year-old male was hired by

19   Defendants to replace her as service manager.  *See id.* ¶ 34.  This employee was less experienced

20   than Ms. Jones, was required to do less than she was, and was paid a higher salary than she was.  *See*

21   *id.* ¶ 35.

22   When Ms. Jones was demoted to service technician, Ms. Bradley represented to TKE

23   employees that Ms. Jones would be "lead mechanic."  *See id.* ¶ 36.  However, Ms. Jones did not

24   receive the same pay rate as Roger Thomas, the TKE employee that she was replacing as lead

25   mechanic.  *See id.*

26   Based on the above, Ms. Jones asserts the following claims in her proposed first amended

27   complaint: (1) gender discrimination against TKE, *see* Cal. Gov't Code § 12940(a); (2) age

28   discrimination against TKE, *see id.*; (3) disability discrimination against TKE, *see id.*; (4) retaliation

**United States District Court**
For the Northern District of California

against all Defendants, *see id.* § 12940(h); (5) harassment against all Defendants, *see id.* § 12940(j); (6) failure to take all steps necessary to remedy discrimination, harassment, and retaliation against TKE, *see id.* § 12940(k); (7) retaliation in violation of public policy against all Defendants; (8) discrimination in violation of public policy against TKE; (9) demotion in violation of public policy against all Defendants; (10) whistleblower retaliation against TKE, *see* Cal. Labor Code § 1102.5; (11) defamation against all Defendants; (12) violation of the Equal Pay Act against TKE, *see* Cal. Lab. Code § 1197.5; (13) indemnification against TKE, *see* Cal. Lab. Code § 2802; and (14) unfair business practices against all Defendants.  *See* Cal. Bus. & Prof. Code § 17200.

        2.    <u>Proposed Amendment Against Ms. Bradley Is Governed by 28 U.S.C. § 1447(e)</u>

        Permitting the amendment would add Ms. Bradley back into the litigation.  This would destroy diversity jurisdiction.  The Court must therefore consider first whether the amendment should be permitted with respect to Ms. Bradley.  As a preliminary matter, the Court notes that, in discussing whether the proposed amendment against Ms. Bradley should be allowed, both parties base their analysis on Federal Rule of Civil Procedure 15(a) alone, rather than 28 U.S.C. § 1447(e). Rule 15(a) provides that, once a responsive pleading is served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  Section 1447(e) provides that, "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e).

        TKE has already answered the original complaint filed by Ms. Jones.  Ms. Bradley never answered the original complaint and, as discussed above, should be dismissed from the case as requested by Defendants.  If Ms. Bradley were not dismissed, then arguably Ms. Jones would have had the right to amend *as a matter of right* against Ms. Bradley.  But the claims against Ms. Bradley are dismissed because the Court concludes that Ms. Bradley was fraudulently joined.  Since Ms. Jones's proposed amended complaint asserts new claims against Ms. Bradley and would, if permitted, have the effect of adding Ms. Bradley back into the case, resulting in divestiture of

United States District Court

For the Northern District of California

1  diversity jurisdiction, the Court concludes that 28 U.S.C. Section 1447(e) rather than Fed. R. Civ.

2  Proc. 15 governs this situation.

3    To be sure, the Court acknowledges that the court in *Thornton v. New York Life Ins. Co.*, 211

4  F.R.D. 606 (N.D. Cal. 2002) ruled otherwise.  In *Thornton*, the Court began by noting that "[c]ases

5  applying § 1447(e) generally involve post-removal attempts to join *new* defendants."  *Id.* at 608

6  (emphasis added).  Neither the Court "nor the parties have found any case in which a plaintiff seeks,

7  by providing more substantial allegations, to turn a fraudulently joined non-diverse party into a

8  legitimate defendant."  *Id.*

9    The Court then stated that, while there was "some basis" for the argument that § 1447(e)

10  should apply to this situation – "language of past cases suggests that § 1447(e) applies when any

11  amendment to the complaint would destroy a federal court's diversity jurisdiction" –

12    the plain language of the statute indicates that it does not apply.
      Walsh [*i.e.*, the sham defendant] simply is not an "additional

13    defendant."  Plaintiff named him at the outset of this action and has
      endeavored throughout the case to make him a party.  This is not, as in

14    other cases involving § 1447(e), a situation in which a plaintiff seeks
      to add a completely new party following removal.  Instead, Plaintiff

15    merely seeks to revise her pleading to add allegations substantiating
      already-made claims against an already-named party to the action.  To

16    prevent Plaintiff from doing this would effectively deny her the ability
      to revise her allegations – an opportunity the federal rules favor

17    liberally granting – based upon a statutory rule [*i.e.*, § 1447(e)]
      intended to limit the introduction of new parties.

18

19  *Id.* at 608-09.  In short, the *Thornton* Court's analysis turned on the use of the word "additional,"

20  which the Court equated with "new."

21    In contrast to *Thornton*, this Court concludes that the purpose of § 1447(e) is to afford the

22  courts control over post-removal efforts to divest jurisdiction and is not limited to the introduction of

23  new parties.  *See, e.g.*, *IBC Aviation Servs. v. Compania Mexicana De Aviacion, S.A. de C.V.*, 125 F.

24  Supp. 2d 1008, 1012 (N.D. Cal. 2000) (noting that "'[t]he legislative history to § 1447(e) . . .

25  suggests that it was intended to undermine the doctrine employed by some courts that amendments

26  which destroyed diversity were to be viewed with suspicion'" and that the purpose of the statute is to

27  "'take advantage of the opportunity opened by removal from a state court to permit remand if a

28  plaintiff seeks to join a diversity-destroying defendant after removal'").  The policy concern that

25

1    drives § 1447(e) obtains whether the insertion of the party which would destroy jurisdiction involves

2    a new party or one previously dismissed as fraudulently joined.  *See Mayes v. Rapoport*, 198 F.3d

3    457, 462 n.11 (4th Cir. 1999) (considering whether plaintiff should be allowed to add a new

4    defendant; noting that, even though "old" defendant had not yet answered the complaint which

5    would ordinarily afford plaintiff the opportunity to amend once as a matter of right, § 1447(e) should

6    still apply).

7          3.    <u>Legal Standard for Motion for Leave to Amend</u>

8          Section 1447(e) affords the court discretion in making a decision on joinder.  *See Newcombe*

9    *v. Adolf Coors Co.*, 157 F.3d 686, 691 (9th Cir. 1998) ("The language of § 1447(e) is couched in

10   permissive terms and it clearly gives the district court the discretion to deny joinder."); *see also*

11   *Mayes v. Rapoport*, 198 F.3d 457, 462 (4th Cir. 1999) ("Under Section 1447(e), the actual decision

12   on whether or not to permit joinder of a defendant under these circumstances is committed to the

13   sound discretion of the district court . . . .")  Under Section 1447(e), courts generally consider the

14   following factors in deciding whether to allow an amendment that adds non-diverse defendants:

15             (1) whether the party sought to be joined is needed for
               just adjudication and would be joined under Federal

16             Rule of Civil Procedure 19(a); (2) whether the statute of
               limitations would preclude an original action against

17             the new defendants in state court; (3) whether there has
               been unexplained delay in requesting joinder; (4)

18             whether joinder is intended solely to defeat federal
               jurisdiction; (5) whether the claims against the new

19             defendants appear valid; and (6) whether denial of
               joinder will prejudice the plaintiff.

20

21   *IBC*, 125 F. Supp. 2d at 1011.

22          Ms. Jones asserts the following claims in her proposed first amended complaint against Ms.

23   Bradley: retaliation, *see* Cal. Gov't Code § 12940(h); harassment, *see id.* § 12940(j); retaliation in

24   violation of public policy; demotion in violation of public policy; defamation; and unfair business

25   practices.  *See* Cal. Bus. & Prof. Code § 17200.  According to Defendants, the proposed amendment

26   should not be permitted because (1) it is brought in bad faith; (2) it is futile; and (3) it is dilatory and

27   will prejudice Defendants.

28

United States District Court
For the Northern District of California

4.      The Factors for Consideration Under § 1447(e) Favor Denial of Amendment

Upon consideration of the factors set forth in *IBC*, the Court denies Ms. Jones leave to amend the complaint as to Ms. Bradley.

a.      Just Adjudication and Rule 19

First, the Court finds that joinder is not required under Rule 19.[5]  Rule 19(a) requires joinder of persons whose absence would preclude the grant of complete relief or whose absence would impede their ability to protect their interests or would subject any of the parties to the danger of inconsistent obligations.  *See* Fed. R. Civ. P. 19(a).  Section 1447(e), however, gives courts broader discretion to allow amendment than the more restrictive Rule 19.  *IBC*, 125 F. Supp. at 1011-12 (citing *Trotman v. United Parcel Service*, 1996 WL 428333, *1 (N.D. Cal. 1996).  When considering joinder under § 1447(e), courts generally "disallow joinder of non-diverse defendants where those defendants are only tangentially related to the cause of action or would not prevent complete relief." *Id.* at 1012.  Here, Ms. Bradley is not an indispensable party and is not necessary for just adjudication of Ms. Jones' claims because Ms. Jones would be able to get full relief from TKE.  Ms. Jones would not be able to obtain any greater or different relief against Ms. Bradley than she could from TKE, the employer.  *See Red Buttons v. National Broadcasting Co.*, 858 F. Supp. 1025 (C.D. Cal. 1994) (denying joinder of defendant's subsidiary and regional executives who would destroy diversity).

b.      Statute of Limitations in State Court

The issue here is related to the sixth *IBC* factor – whether Ms. Bradley would be prejudiced by denial of joinder – because if otherwise timely claims asserted in this federal action would be time-barred in state court, the Plaintiff would be left without remedy.  The inquiry is also related to the fifth *IBC* factor – whether the new claims appear valid; if the claim is invalid, any time bar in

---

[5] In considering joinder of a non-diverse party after removal, the Court is not required to consider a Rule 19 analysis, but may consider whether a party would meet Rule 19's standard for a necessary party.  *See Gunn v. Wild*, 2002 WL 356642 at *4 (N.D. Cal. 2002) (citing *Yniques v. Cabral*, 985 F.2d 1031 (9th Cir. 1993)).  Under Rule 19, necessary parties are those "having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it." *CP National Corp. v. Bonneville Power Administration*, 928 F.2d 905, 912 (9th Cir. 1991) (quoting *Shields v. Barrow*, 58 U.S. (17 How.) 130, 139 (1854)).

1    state court would be harmless.  The first question is whether the claim at issue is time-barred even in

2    this federal court.  If so, Ms. Jones suffers no prejudice as a result of denial of joinder.  If the claim

3    would not be time-barred in this federal action, the Court must then examine whether the otherwise

4    viable claim, if refused here, would be time-barred in state court.  The Court proceeds to examine

5    the new claims under this two-part analysis.

6                          i.        Retaliation and Harassment Under FEHA

7         Defendants argue that Ms. Jones's FEHA claims against Ms. Bradley – for retaliation and

8    harassment – are barred for failure to exhaust remedies and the statute of limitations.[6]

9         Defendants contend Ms. Jones failed to exhaust her administrative remedies with respect to

10   the retaliation and harassment claims.  In her charge of discrimination filed with the California

11   DFEH, Ms. Jones stated that she was being discriminated against on the basis of her sex, age, and

12   disability and also in violation of the Equal Pay Act.  Ms. Bradley did *not* check the box that stated

13   "retaliation" as part of her charge of discrimination, nor did she specifically call out either retaliation

14   or harassment in her discussion of the particulars.  She simply stated:

15              I began working for Respondent on December 2, 2002, as a
            Service Technician.  I had been diagnosed with a disability on January
16          14, 2000.  I was promoted to Superintendent on March 1, 2003, and
            was given a raise to base salary plus 12.5%.  I was promoted to
17          Service Manager in September 2003 but was not given a raise in pay.
            I was demoted back to Service Technician on April 2, 2004.  At the
18          time of my demotion, the Branch Manager, Lisa Bradley, questioned
            me about my disability.  The male hired to replace me, Donovan
19          McKeever, was paid more as the Superintendent than I had earned as
            the Service Manager.  McKeever is 33 years of age, was paid more,
20          and has considerably less experience than I do and supervises fewer
            individuals than I did.
21
                Respondent stated I was demoted because of complaints it
22          received from my subordinates and for poor union relations.

23              I believe I have been discriminated against because of my
            gender, female, my age (49), and in violation of the Americans with
24          Disabilities Act of 1990, as amended.

25

26

27      _____

            [6] In their opposition to the motion for leave to amend, Defendants also argue that Ms. Jones does
28   not have a valid whistleblower retaliation claim, *see* Cal. Lab. Code § 1102.5, against Ms. Bradley.  This
     argument is moot, however, since the claim has been asserted against only TKE and not Ms. Bradley.

**United States District Court**
For the Northern District of California

1   Opp'n, Ex. A. Defendants further contend that the retaliation and harassment claims are barred by

2   the statute of limitations, and there is no basis for equitable tolling.

3                                   A.      Exhaustion

4         Under California law, a claim has been administratively exhausted even if not specifically

5   identified in the charge of discrimination if the claim is "'like or reasonably related to'" the claim

6   that was identified in the charge of discrimination such that an investigation into the unidentified

7   claims would reasonably have been triggered. *Rodriguez v. Airborne Express*, 265 F.3d 890, 897

8   (9th Cir. 2001) (concluding that plaintiff's "charge of discrimination against Mexican-Americans

9   would not reasonably trigger an investigation into discrimination on the ground of disability"

10  because "[t]he two claims involve totally different kinds of allegedly improper conduct, and

11  investigation into one claim would not likely lead to investigation of the other").

12        In the instant case, an investigation into Ms. Jones's charge of discrimination, which asserted

13  claims of discrimination based on sex, age, and disability, would not likely have triggered an

14  investigation into the now asserted retaliation or harassment claims, because these claims are based

15  on substantially different facts. Nothing in her administrative complaint suggests she was engaged

16  in protected activity which then resulted in an adverse employment condition. Nor does the

17  administrative complaint suggest verbal or physical harassment and a resulting hostile working

18  environment. The DFEH complaint merely states garden variety claims of discrimination in the

19  terms of her employment. If such a complaint were deemed sufficient to trigger an investigation into

20  retaliation and harassment, then so would every claim of discrimination.

21                                  B.      Statute of Limitations

22        Because Ms. Jones's claims for retaliation and harassment were substantially unrelated to her

23  discrimination claim and thus fell outside the scope of her administrative charge of discrimination

24  with the DFEH, any attempt to exhaust them now would be barred by the statute of limitations. In

25  *Rodriguez*, the Ninth Circuit held that an untimely amendment to a charge of discrimination did not

26  relate back to the plaintiff's original complaint. *See Rodriguez*, 265 F.3d at 899. The court

27  explained: "Rodriguez's timely administrative complaint [which asserts racial discrimination] fails

28

United States District Court

For the Northern District of California

1    to offer an adequate factual basis to support a charge of disability discrimination, and thus fails to

2    warrant relation back of the untimely amended charge." *Id.*

3          Ms. Jones contends, however, that even if failure to exhaust were found, equitable tolling

4    should apply and defeat any statute-of-limitations bar.  She notes that, in *Rodriguez*, the Ninth

5    Circuit held that equitable tolling applies when a plaintiff "(1) diligently pursued his claim; (2) was

6    misinformed or misled by the administrative agency responsible for processing his charge; (3) relied

7    in fact on the misinformation or misrepresentations of that agency, causing him to fail to exhaust his

8    administrative remedies; and (4) was acting pro se at the time." *Id.* at 902.  Ms. Jones provides a

9    declaration in which she states that, when she first filed a complaint of discrimination with the

10   EEOC, she was not represented, *see* Jones Decl. ¶ 2; and that she told the agency investigator during

11   the interview not only about the discrimination she suffered but also the retaliation and harassment –

12   claims supported by "a stack of documents . . . approximately three inches thick." *Id.*  Ms. Jones

13   also states that, when she was presented with a copy of the final charge of discrimination, she "was

14   not informed that if anything was missing (i.e. 'Retaliation' or 'Harassment'), that I was giving up

15   my right to proceed on that cause of action.  The investigator did not explain to me the ramifications

16   of the Charge of Discrimination, but only indicated that it was a brief summary of what I had told

17   her." *Id.* ¶ 3.

18         The Court doubts whether these facts would be enough to support a claim for equitable

19   tolling to go to the jury.  *See Rodriguez*, 265 F.3d at 902 ("The trier of fact must resolve disputed

20   factual issues in order to determine whether Rodriguez is entitled to equitable excuse for his failure

21   to exhaust his disability discrimination claim.").  In *Rodriguez* and the cases cited therein, the

22   agency made *affirmative* misrepresentations to the discrimination complainants.  For example, in

23   *Rodriguez*, the plaintiff claimed that he told the agency investigator to pursue a charge of disability

24   discrimination but the investigator "told him repeatedly during the interview that, 'under the law,' he

25   must claim that he was discriminated against because of race, age, national origin or religion, and

26   then steered the interview toward a possible claim of race discrimination." *Id.* at 894.  Similarly, in

27   *Denney v. Universal City Studios, Inc.*, 10 Cal. App. 4th 1226 (1992), the plaintiff asserted that he

28   hold the agency about age discrimination, disability discrimination, and retaliation but the agency

United States District Court

For the Northern District of California

1  "prepared a formal complaint raising only the age charge.  When Denney complained,  the EEOC

2  told him that the age charge was sufficient to commence the administrative process (including

3  referral to DFEH)."  *Rodriguez*, 896 F.3d at 900-01.  Finally, in *Albano v. Schering-Plough Corp.*,

4  912 F.2d 384 (9th Cir. 1990), the plaintiff originally told the agency about failure to promote on the

5  basis of age but thereafter sought to amend to add a claim for constructive discharge; the agency,

6  however, refused to do so, telling the plaintiff that the constructive discharge would be encompassed

7  by his original charge.  *See Rodriguez*, 896 F.3d at 901.

8      Here, Ms. Jones has not alleged an affirmative misrepresentation by the agency, but rather

9  only an omission.  *Rodriguez*, *Denney* and *Albano* are thus distinguishable.  More importantly,

10  equitable tolling would not apply here because Ms. Jones did not diligently pursue her claims for

11  retaliation and harassment.  Though Ms. Jones claims to have told the agency about the retaliation

12  and harassment, when presented with "brief summary" by the agency, she did not do anything to

13  point out the absence of any allegations of retaliation or harassment.  It was not asserted in this

14  litigation until after the case was removed to federal court and the motion to dismiss was filed.  Its

15  first assertion in the proposed amended complaint, filed on October 6, 2005, comes a year and a half

16  after her demotion in April, 2004.

17      Accordingly, Ms. Jones's FEHA harassment and retaliation claims are barred regardless of

18  whether they are presented to this Court or a state court.  The statute of limitations thus imposes no

19  prejudice to her as a result of denial of joinder herein.

20               i.    Retaliation and Demotion in Violation of Public Policy

21      For Ms. Jones's common law claims for retaliation in violation of public policy and

22  demotion in violation of public policy, there is no exhaustion requirement.  *See Rojo*, 52 Cal. 3d at

23  88 ("although an employee must exhaust the FEHA administrative remedy before bringing suit on a

24  cause of action under the act or seeking the relief provided therein, exhaustion is not required before

25  filing a civil action for damages alleging nonstatutory causes of action"); *Walrath v. Sprinkel*, 99

26  Cal. App. 4th 1237, 1240 (2002) (agreeing with plaintiff that a common law cause of action for

27  retaliation in violation of public policy does not require the exhaustion of administrative remedies).

28  Since the claims for retaliation and demotion in violation of public policy are based on Ms. Jones's

United States District Court

For the Northern District of California

1    demotion, that event took place on April 2, 2004, there would be no statute-of-limitations bar to the

2    claims.  *See* Cal. Code Civ. Proc. § 335.1 (providing for a two-year statute of limitations for personal

3    injury).  *See also Heath v. AT&T Corp.*, 2005 WL 2206498, *6 (N.D. Cal. 2005).  Accordingly,

4    denial of joinder of this claim will not preclude Ms. Jones from asserting it in state court.  Thus, no

5    prejudice obtains from denial of joinder.

6                                     ii.    Defamation

7           Defendants argue that, in addition to the employment discrimination claims discussed above,

8    Ms. Jones's defamation claim is time barred, regardless of the court in which it is asserted.  The

9    statute of limitations for a claim of libel or slander is one year.  *See* Cal. Code Civ. Proc. § 340(c).

10   In the proposed amended complaint, Ms. Jones admits that "the precise dates of [the defamatory]

11   publications are not known" but that she "believes that the publications may have started in

12   December 2003."  Proposed FAC ¶ 24.  According to Defendants, "[s]ince Plaintiff alleges nothing

13   more than her belief that the publications are continuing, and does not specifically identify any

14   defamatory statements occurring in the past year, she is foreclosed from bringing her defamation

15   claim."  Opp'n at 10.

16          In response, Ms. Jones argues that there is no statute-of-limitations bar because every

17   repetition of a defamatory statement is a separate publication that gives rise to a new cause of action.

18   *See* Reply at 5.  While this is true, Ms. Jones has not alleged that there was any republication within

19   the past year.

20          More importantly, the only way Ms. Jones would be prejudiced by denial of joinder would

21   be if there were any republished defamation by Ms. Bradley occurring between one year prior to the

22   filing of the motion for leave to amend complaint (*i.e.*, October 6, 2004) and one year prior to the

23   date that she is able to re-file this claim in state court following this order (*i.e.*, late December

24   2004);[7] any defamation prior to October 6, 2004 would be time barred in either court.  Any

25   defamation within a year of the filing of a new state suite will not be time barred.  The amended

26

27   ───────────────────────

28          [7] The Court focuses solely on the defamation claim against Ms. Bradley; it is joinder of that
     claim, not the case against TKE, that is at issue under § 1447(e).

United States District Court

For the Northern District of California

1    complaint contains no allegation of defamation by Ms. Bradley within this two month window in

2    2004.  Hence, it is highly unlikely that Ms. Jones will be prejudice by the denial of joinder.

3                    iii.    Unfair Business Practices (*i.e.*, Violation of California Business &

4                            Professions Code § 17200)

5          The statute of limitations applicable to this claim is four years.  Bus. & Prof. Code § 17208.

6    Thus, any such claim would not time barred in state court.

7                    iv.    Summary

8          In sum, it is highly unlikely that denial of joinder will result in the loss of any viable claims

9    due to the statute of limitations in state court.  This weighs against joinder.

10              c.    Unexplained Delay

11         According to Defendants, Ms. Jones delayed as she "waited until almost the end of the one-

12   year statutory period under FEHA to file her lawsuit."  *Id.* at 10-11.  She then "waited another three

13   months to serve the corporate defendant and another three weeks after that to serve Defendant

14   Bradley."  *Id.* at 11.  As discussed above, she did not assert the new claims against Ms. Bradley until

15   October 6, 2005, after this case was removed and Defendants filed the motion to dismiss.  Yet, all

16   the facts now alleged in the amended complaint were known to Ms. Jones.  The amendment is not

17   based on newly discovered evidence.  The delay is asserting these new claims is not explained

18   satisfactorily.  This factor weighs against joinder.

19              d.    Intent to Defeat Federal Jurisdiction

20         Defendants argue that the proposed amendment against Ms. Bradley is brought in bad faith

21   because it is intended to destroy the Court's diversity jurisdiction.  The Ninth Circuit has

22   acknowledged that such an intent can constitute bad faith.  *See DCD*, 833 F.2d at 187 (citing *Sorosky*

23   *v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987) (holding that district court did not abuse its

24   discretion by denying plaintiff's motion to add new defendant because bad faith motive is a proper

25   basis for denying leave to amend and district court found that plaintiff's motive for adding defendant

26   was to destroy diversity jurisdiction)).

27         In the case at bar, the Court has already found Ms. Bradley was fraudulently joined in the

28   original complaint.  The unexplained delay in asserting the new claims against her and the timing of

                                                        33

1    her motion for leave to file the amended complaint – coming after removal, the filing of her motion

2    to remand and Defendant's motion to dismiss – suggests an intent to defeat federal jurisdiction.  This

3    weighs against joinder.

4                    e.      Validity of New Claims

5           As discussed above, Ms. Jones's retaliation and harassment claims under FEHA are barred

6    for failure to exhaust and for statute of limitations.

7           As to her claim for violation of public policy, she may well state a valid and timely claim.

8           The unfair business practice claim against Ms. Bradley is problematic for the reasons stated

9    above; the statute does not apply to individual supervisors, at least as to claims that merely "plead

10   around" statutory claims which the California legislature has determined cannot be asserted against

11   individual supervisors.  To the extent the revised unfair business practice claim has been expanded

12   in the amended complaint to include conduct, such as retaliation in violation of public policy, for

13   which common law action applies to individual supervisors, it is possible that Ms. Jones may be able

14   to state a claim under § 17200.

15          Finally, as to the defamation claim, there is a question whether Ms. Jones's allegations are

16   sufficiently specific.  In the proposed amended complaint, Ms. Jones asserts a claim for defamation

17   against both TKE and Ms. Bradley.  According to Ms. Jones, the "false and defamatory statements

18   included express and implied: accusations that Plaintiff violated company policies; that she was a

19   poor performer; that she deserved written warnings and disciplinary actions against her; that she was

20   incompetent; a troublemaker; made false complaints; was unreliable; was lazy and was dishonest."

21   Proposed FAC ¶ 123.  Ms. Jones adds: "The above defamatory statements were understood as

22   assertions of fact, and not as opinion."  *Id.* ¶ 130.

23          Defendants contend that the allegations supporting the defamation claim are insufficiently

24   specific, citing *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303 (N.D. Cal. 1997)

25   (Brazil, J.).  In *Silicon Knights*, Judge Brazil noted that "[t]he words constituting a libel or slander

26   must be specifically identified, if not plead verbatim.  While the exact words or circumstances of the

27   slander need not be alleged to state a claim for defamation, the substance of the defamatory

28   statement must be alleged."  *Id.* at 1314 (internal quotation marks omitted); *see also Okun v.*

1    *Superior Court*, 29 Cal. 3d 442, 458 (1981) ("[W]e conclude that slander can be charged by alleging

2    the substance of the defamatory statement.").  He concluded that, in the case under consideration,

3    this standard was not met because "[t]he complaint contains only general allegations of the

4    defamatory statements and does not identify the substance of what was stated by the Defendants."

5    *Silicon Knights*, 983 F. Supp. at 1314.  For example,

> [t]he statements in the complaint identified as defamatory by
> Plaintiff include the allegation that Crystal Dynamics has refused to
> give proper originator and developer credit for Kain (P 21); that
> Defendants engaged in wrongful conduct by "making false,
> misleading, and commercially disparaging statements about Silicon
> Knights' involvement in the creation and development of Kain to
> Activision (and others in the video game industry)" (P 76); and by
> making "false and defamatory statements to several of Silicon
> Knights' customers, prospective customers, industry associates and the
> public regarding: (a) the quality and reliability of Silicon Knights'
> products, (b) the competence and ability of Silicon Knights'
> employees, and (c) Silicon Knights' cooperation and ability to work
> with customers, suppliers, or other persons in the software industry."

13   *Id.* at 1313-14.

14        In the instant case, Ms. Jones has included allegations that are slightly more specific.

15   However, she has not alleged which defamatory statements, if any, are attributable to Ms. Bradley.

16   Nor is there any information about to whom such statements were made.

17        While potentially problematic, it may be possible for Ms. Jones to state a valid claim for

18   defamation against Ms. Bradley.

19        In conclusion, some but not all of the claims appear valid.  This factor weighs slightly in

20   favor of permitting joinder.

21        f.    Prejudice to Plaintiff if Joinder is Denied

22        As discussed at length above, Plaintiff will not likely suffer any prejudice if joinder is

23   denied; no otherwise viable claim will be lost due to the statute of limitations.  While she may be

24   inconvenienced in having to litigate in two forums should she choose to assert her new claims in

25   state court, she can obtain complete relief should she prevail against TKE in this Court.  The Court

26

27

28

1  discerns no practical advantage in making Ms. Bradley an additional Defendant given her claims

2  against TKE.[8]  This factor weighs against joinder.

3      4.   Summary

4      On balance, nearly all the six factors disfavor joinder of the claims against Ms. Bradley

5  which would defeat federal jurisdiction.  The Court thus exercises its discretion under 28 U.S.C. §

6  1447(e) to deny Ms. Jones's motion for leave to amend her complaint against Ms. Bradley.

7      5.   Motion for Leave to Amend Claims Against TKE

8      In their opposition to Ms. Jones' motion for leave to amend, Defendants do not address the

9  proposed amendment against TKE.  Defendants state:

> In this Opposition, Defendant TKE does not concede the validity of
> any of Plaintiff's new or revised claims against it.  Rather, this
> memorandum addresses the impropriety of permitting an amendment
> of the Complaint to keep Bradley as a party to this action.  In the
> event, however, that the Court allows Plaintiff to amend as against
> Defendant TKE only, TKE reserves the right to raise all applicable
> defenses to Plaintiff's claims in a responsive pleading, pursuant to the
> Federal Rules of Civil Procedure and the Local Rules of this Court.

15  Opp'n at 3 n.1.  The Court therefore grants Plaintiff's motion for leave to amend the complaint as to

16  the claims against TKE without prejudice to TKE's raising defenses or otherwise challenging the

17  sufficiency of the allegations.

18      **IV.   CONCLUSION**

19      Ms. Jones's motion to remand based on the original complaint is DENIED.  Defendant Lisa

20  Bradley's motion to dismiss the complaint against her is GRANTED.  Ms. Jones' motion for leave

21  to amend is DENIED as to her claims against Ms. Bradley and GRANTED as to her claims against

22  TKE.  Ms. Jones shall file her amended complaint against TKE (eliminating the claims against Ms.

23  Bradley) by January 9, 2005.

24      Defendant Lisa Bradley is dismissed from this action.

---

[8] At oral argument, Ms. Jones argued it may be advantageous to obtain an injunction under Business & Professions Code § 17200 against Ms. Bradley personally.  At this juncture, it appears that any advantage over an injunction against TKE would be speculative, since TKE would be charged with ensuring its agents and employees comply with any injunction.

1        A Case Management Conference is hereby set for January 18, 2006, at 1:30 p.m.  The parties

2 shall file a joint Case Management Conference statement by January 11, 2006.

3        This order disposes of the Docket Numbers 7, 15, and 18.

4

5        IT IS SO ORDERED.

6

7 Dated:  December 22, 2005

8                                                 _____

9                                                 EDWARD M. CHEN
United States Magistrate Judge

10

11

12

**United States District Court**
For the Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28